TRANSFER NO. 8.[1]

NEW YORK CENTRAL LIGHTERAGE NO. 2.

REDDY v. NEW YORK CENTRAL LIGHTERAGE NO. 2 and TRANSFER NO. 8.

(District Court, S. D. New York. December 21, 1892.)

COLLISION—TUGS AND TOWS—EAST RIVER—NAVIGATION NEAR PIERS.
    Steam tug No. 2, with a heavy tow alongside, having just left the ea·" of pier 5, East river, heading up, was swinging out in the ebb tide to go down the river. Steam tug No. 8, with a car float in tow alongside, was coming up the river at the rate of about 6 or 8 knots, and so near the pier that she could not be seen by No. 2 until the latter had left her pier, and when the two were about 750 feet apart. No. 2 thereupon whistled twice, and hooked up, in an attempt to pass ahead of No. 8, and out into the river; but the tow on her starboard side was struck and sunk by the car float alongside of No. 8. *Held*, that the cause of the collision was the fault of No. 8, in going at such speed, so close to the shore, around the bend, and that, the situation being critical from the moment the vessels discovered each other, the ordinary rule of the starboard hand did not apply, and that the navigation of No. 2 was not, under the circumstances, negligent, but, if erroneous, was so by an error of judgment in extremis, and by the other's fault.

In Admiralty. Libel by Philip Reddy against the New York Central Lighterage No. 2 and Transfer No. 8 to recover damages for a collision. Decree for libelant against No. 8, and exempting No. 2.

Stewart & Macklin, for libelant.
Carpenter & Mosher, for the New York Central Lighterage No. 2.
Page & Taft, for the Transfer No. 8.

BROWN, District Judge. A little after 2 o'clock in the afternoon of September 6, 1892, as the steam tug No. 2, having just left the

[1] Reported by E. G. Benedict, Esq., of the New York bar.

end of pier 5, East river, was swinging out and around in order to go down the East river and up the North river, with four boats in tow, namely, two on each side, the libelant's canal boat C. E. Moore, which was the outer boat on the starboard side, came in collision with a car float, which was coming up the East river near the New York shore in tow of tug No. 8, on her port side. The collision was about abreast of pier 4, or between that and pier 5, and, as I find, not over 200 feet off from the end of the pier. The port corner of the float first struck the canal boat about amidships, at an angle of about five points. The canal boat was light, and the end of the float crashed into and ran nearly through the canal boat, causing her to sink immediately. The above libel was filed to recover the damages.

There is a conflict as to the distance from the ends of the piers, at which the tug No. 8 was coming up. The witnesses for the latter say that she was at least 300 feet off; while the witnesses for No. 2 say that it was very much less. The latter are confirmed by the pilot and deck hand on the Hamilton ferryboat Pierpont, which waited to allow tug No. 8 to pass ahead of her before going out of her slip; they say she passed very near the end of the piers. Nor can I find that at collision No. 2 was heading towards Governor's island, and No. 8 for Atlantic avenue, as No. 8 contends. No. 8's witness Miller says No. 8 was heading about for Fulton ferry, Brooklyn, and as the angle of collision was but about five points, No. 2 would be heading about across the river as her witnesses testify.

I find, therefore, that No. 8 was coming up so near to the Staten island ferry and pier 1 that she could not be seen until after No. 2 had left pier 5, and was swinging out into the stream, and was properly making her way out towards the middle of the river, where, by law, she was required to go; that No. 8 was seen as soon as she could be seen; that the bows of her float, the rest of her not being visible, appeared very near to pier 1, and so close to it as to make it apparently impossible for No. 2 to clear her by swinging round to starboard; that the two boats were then not more than 750 feet apart; and that in my judgment No. 2 did the best thing that was apparently possible to avoid collision, by giving a signal of two whistles and hooking up, in the endeavor to get out into the river as rapidly as possible. No. 8 replied at once with two whistles.

In behalf of No. 8 it is claimed that she stopped at once, and very speedily backed strong. If this is true, and if No. 8 did do all that she could to avoid the collision in that way, this fact, instead of relieving her from responsibility, only proves the more strongly the critical situation in which the vessels were placed from the moment when they were discoverable. The pilot of No. 8 in fact says that he considered the situation dangerous from the first, but that he gave the answer of two whistles, because No. 2 had asked it.

The ordinary rule of the starboard hand does not control this case, for the reason that No. 8 was from the first in fault in going so close to the shore and at such speed, viz. from six to eight knots; so that there was not time and opportunity for No. 2, heavily incumbered as she was, to get out of the way. The Amos C. Barstow, 50 Fed. Rep. 620. No. 8 was required by law to go in mid-river, "as near

as may be;" or at least out far enough to give sufficient time and space for No. 2 to observe and maneuver. Had No. 8 been at that distance out, the ordinary rule of the starboard hand would have controlled the case. But here the situation, as above stated, was critical from the moment the two vessels were discovered to each other, and critical by the fault of No. 8 in going so near shore. Seen around the bend, No. 8 would naturally appear to No. 2 to be nearer the shore than she really was. Having no proper time and opportunity for observation, No. 2 could only act on what was seen at the moment and according to what seemed to be best. She was only bound to do the best she could, (The Rose Culkin, 52 Fed. Rep. 328, 330;) and having been put in a critical situation through the fault of No. 8, even if No. 2's pilot made any error of judgment as to what was best, such an error of judgment would not be a legal fault. The Blue Jacket, 144 U. S. 371, 392, 12 Sup. Ct. Rep. 711; The Elizabeth Jones, 112 U. S. 514, 526, 5 Sup. Ct. Rep. 468. No. 2 could not reverse, because in the ebb tide, if she had backed, she would have drifted down upon the vessels lying at the end of pier 4; and it would have been extremely rash, in my judgment, for her to attempt to turn nearly half a circle under a signal of one whistle, so as to go between the shore and No. 8, when No. 8 appeared already to be so near the docks.

No. 8 in going so near the shore took all the risk of being able to stop before running into any other boat around the bend that was navigated without fault, and with reasonable skill in the endeavor to keep out of the way as soon as the danger was discoverable. The Amos C. Barstow, supra; The Columbia, 8 Fed. Rep. 716, 718.

The present case differs from all those cited in behalf of No. 8 in the fact that the two boats when first visible were not a sufficient distance from each other to give No. 2 the necessary time and space to make proper observations and keep out of the way. No. 2 was heavily incumbered. She could move but slowly and maneuver with difficulty. The Garfield in the case of The Amos C. Barstow, supra, and the Devoe in the case of The Senff, 53 Fed. Rep. 669, which in other respects presented somewhat analogous facts, were quite the opposite, in the circumstances above named, being both unincumbered, easily and quickly handled, and, therefore, found to have been able to keep out of the way, notwithstanding the fault of the Barstow and the Senff. Had No. 2, in the present case, been a light tug unincumbered, I should have held No. 2 in fault, upon a collision like this, because she would have been able by ordinary skill to have avoided collision, notwithstanding the fault of No. 8. The situation of No. 2 with her heavy tow was wholly different. I am satisfied that she was managed with as much good judgment and skill as there was time to command, and that she is, therefore, without fault.

Decree for the libelant against No. 8, and exempting No. 2.