Luther GILLISON

v.

BATON ROUGE COAL AND TOWING COMPANY, Inc.

No. 2875.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 29, 1959.

James C. McGehee, Jr., Natchez, Miss., Dodd, Hirsch & Barker, Harold J. Lamy, New Orleans, La., for plaintiff.

Lemle & Kelleher, Charles Lugenbuhl, New Orleans, La., for respondent.

CHRISTENBERRY, Chief Judge.

The foregoing matter having been tried to the Court without a jury, the Court having heard evidence and the argument of proctors, and having taken time to consider the matters, hereby makes the following findings of fact and conclusions of law:

### Findings of Fact

**1.**

At all times material hereto libelant, Luther Gillison, was and now is a person of the full age of majority and a resident of the State of Mississippi.

**2.**

At all times material hereto respondent, Baton Rouge Coal and Towing Co. Inc., was and now is a corporation organized under the laws of the State of Louisiana.

**3.**

At all times material hereto, Baton Rouge Coal and Towing Co., Inc., was the owner and operator of the tug Tickfaw, a twin screw vessel propelled by two diesel engines of approximately 1,440 indicated horsepower with its engines pilothouse controlled, 84.6 feet in length overall, 19.0 feet wide, and with a hull depth of approximately 8.8 feet. She was shoving ahead a tow of two barges, one loaded with cement and one with asphalt. The overall length of the tow was 550 feet and its width was 40 feet at its widest point which, together with the length of the towboat, made up astern, produced a flotilla 634.6 feet long and 40 feet wide at the widest point. The pilothouse floor of the tug Tickfaw was considerably above the tops of the two barges and the pilot at the wheel of the tug Tickfaw had ample visibility over the head of the two barges being pushed ahead.

**4.**

At all times material hereto, libelant was the owner and operator of a small motor launch measuring approximately 19 feet in length by 4 feet in width which, on the afternoon of the collision, was being propelled by a small inboard engine.

**5.**

On the afternoon of September 14, 1953, the tug Tickfaw and its two-barge tow, upbound on the Mississippi River, were in a collision with the motor launch being operated by libelant, which was then apparently crossing the Mississippi River at Natchez, Mississippi, at approximately 12:30 p. m. Visibility was excellent and the weather conditions were favorable. The current in the river was between two and three miles per hour.

**6.**

The collision occurred in the Mississippi River at Natchez just opposite a small landing referred to as the Navy Dock. The Navy Dock is a small pontoon landing for small motor launches, moored alongside on the east bank of the Mississippi River at Natchez. Just prior to the collision, the tug Robert R, owned by Choctaw Transportation Company, arrived at this landing, waiting to meet the Tickfaw to assist her tow upriver. Neither Choctaw Transportation Company nor the Robert R are parties to this litigation. The Robert R arrived at Natchez prior to the Tickfaw's arrival and after icing up, took a position on the east bank just below the Navy Dock. Several other people were present at or near the Navy Dock before and at the time of the collision. A Mr. Wilkerson was standing on the Navy Dock, closest to the point of the collision, and a Mr. and Mrs. Truitt were on the river bank some distance away.

**7.**

The Mississippi River at Natchez is approximately 1,800 feet wide with a navigable channel of at least 1,000 feet. From the Highway Bridge north the river turns gradually to the left, turning sharply left just above Natchez. As the Tickfaw came through the Highway Bridge at Natchez, she was traveling on

a course upriver approximately 800 feet off the east bank, at a speed of about five miles per hour. As the Tickfaw came through the bridge, her pilot, Captain Vernon Rushing, slowed her engines in order to facilitate the Robert R coming alongside to make up to the tow.

8.

As the Tickfaw and its tow approached the Navy Dock, libelant left the Navy Dock in his small motor launch and proceeded across and up the river at a speed of about five or six miles per hour. Gillison was seated on the port side of his launch, facing the Mississippi Bank and he was observed waving and talking to some persons on the Navy Dock, apparently Wilkerson and Mr. and Mrs. Truitt. Captain Rushing, observing Gillison, blew a danger signal and backed the tug's engines full astern, but Gillison, without turning around or giving any indication that he had observed the Tickfaw, ran his launch into the starboard lead corner of the Tickfaw's lead barge, approximately 20 feet back from the head log. The Robert R, which had left its landing and was proceeding upriver at a moderate rate of speed, observed the danger and signalled Gillison by blowing the Robert R's whistle and in addition, her crew on deck shouted warnings. Gillison either did not hear these warnings or neglected them because he continued on his course into collision. Gillison's testimony indicates that he was absolutely unaware of the approach of the tug Tickfaw and that he did not hear either the signals from the Robert R or the tug Tickfaw.

9.

I find from the credible testimony that Gillison proceeded across and up the river into the side of the Tickfaw's tow without taking any precautions to determine whether any other vessels were in the area. I further find that whistle signals were blown by both the tug Tickfaw and the Robert R and that Gillison either heard or should have heard these signals. Both the Captain of the Robert R and Mr. Wilkerson, impartial parties not connected with the litigation, heard the signals and they should have been audible to Gillison.

10.

I find from the credible testimony that Gillison did not leave the Navy Dock until the lead barge of the Tickfaw's tow was practically abreast of him. He proceeded out and across the river at an angle upriver, facing the Mississippi Bank, and did not look, sound any signals or make any attempt to determine the presence of other vessels. I further find from the credible testimony that Captain Rushing did everything within his power to notify Gillison of the Tickfaw's presence and to stop his tow by placing the Tickfaw's engines in reverse but that Gillison, still oblivious to the danger, ran into the side of the lead barge.

11.

As a result of the collision, Gillison's launch was sunk and he was thrown into the river, sustaining personal injuries. However, because of the findings made herein, I find it unnecessary to go into detail concerning the extent of his injuries.

Conclusions of Law

1.

The subject matter of this litigation, a marine collision, is within the admiralty and maritime jurisdiction of this Court.

2.

Navigation of the waters wherein this collision occurred is governed by the "Pilot Rules for the Western Rivers and the Red River of the North", 33 U.S. C.A. § 301 et seq.

3.

 Libelant, Luther Gillison, was grossly at fault in:

(a) Failing to take any precautions to determine the presence of other vessels before crossing the river.

(b) Negligently navigating his motor launch into the side of the tug Tickfaw's tow.

(c) Failing to hear and heed the warning signals blown by the tug Tickfaw and the tug Robert R.

(d) Failing to keep any lookout for upbound vessels.

### 4.

Under the circumstances, libelant's contention that this was a crossing situation, casting him in the role of the privileged vessel, cannot be maintained. I have found that Gillison started out from the Navy Dock when the head of the Tickfaw's tow was abreast of his vessel and it is impossible to consider that the motor launch operated by him was a privileged vessel as there was neither sufficient time nor space to permit either the maneuvers or signals required by the crossing rules. The Transfer No. 8, D.C., 53 F. 670, affirmed 2 Cir., 69 F. 846, Griffin on Collision, Page 106. Even if the situation were to be considered a crossing situation, the tug Tickfaw did exactly what the rules require in sounding the danger signal and backing her engines full astern as danger became apparent. The crossing rules cannot be interpreted as to require the burdened vessel to back down out of the path of another vessel which proceeds into its side without regard to the risk of collision and without knowledge of the presence of the other vessel.

### 5.

Although the doctrine of last clear chance is applicable in admiralty, I find it has no application to the collision here where the tug Tickfaw did everything in its power to avoid the collision. The gross negligence of libelant was the sole cause of the collision.

### 6.

For the reasons above given, I find that this collision occurred through the sole fault of the libelant, Luther Gillison, and that there was no fault on the part of the tug Tickfaw or respondent, Baton Rouge Coal and Towing Co., Inc. The libel is accordingly dismissed at libelant's cost.